UNITED STATES of America ex rel. Louis TESTAMARK, Petitioner-Appellee,

v.

L. J. VINCENT, Superintendent, Green Haven Correctional Facility, Stormville, New York, Respondent-Appellant.

No. 636, Docket 73-2614.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1973.

Decided May 8, 1974.

Lillian Z. Cohen, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellant.

L. Mifflin Hayes, New York City (Ralph K. Nickerson and Murray Allan Gordon, New York City, of counsel), for petitioner-appellee.

Before MOORE, HAYS and TIMBERS, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal brought by the Attorney General of the State of New York on behalf of L. J. Vincent, Superintendent, Green Haven Correctional Facility (hereinafter the "State") from an order granting the application of peti-

tioner, Louis Testamark (Testamark) for a writ of habeas corpus and directing that the State retry Testamark within 60 days or release him. For the reasons subsequently outlined, we reverse, direct that the petition be dismissed and the writ be denied.

The basis for the petition is petitioner's claim that upon his trial in the Supreme Court, New York County, in January, 1971, he was denied effective representation by counsel and, hence, deprived of a fair trial.

On December 24, 1969, Testamark entered a crowded liquor store, drew a gun and proceeded to take money from the cash register. The owner of the store, grabbed the weapon which discharged a shot into the ceiling, drew his own gun (for which he had a permit) and shot Testamark in the stomach. Testamark, after firing at the owner, fled despite his wound but was quickly captured.

On March 16, 1970, Testamark was arraigned and the Legal Aid Society was assigned to represent him. Shortly thereafter Mrs. Dorothy Cropper, an attorney for the Society, was assigned to the case. She visited Testamark in the Tombs, and took a statement. There is no claim that this statement did not disclose Testamark's version of the facts relating to the robbery or was in any way inadequate to enable a defense attorney to plan such defense, if any, as the facts warranted. On May 14, 1970, Testamark was indicted and on May 26th he was arraigned. Thereafter, Testamark's counsel endeavored to negotiate a mutually satisfactory plea bargain with the prosecutor but was unsuccessful. Defense counsel so advised the court when the case was called for trial.

Mrs. Cropper had originally agreed to set October 20th as the trial date.

Unfortunately, before that date Mrs. Cropper was injured and Mr. Edward Lipton of the Society was assigned to the case. On October 27th Lipton announced his readiness for trial. The case was marked "ready and passed." On October 30th Testamark appeared with counsel but the case was again passed to November 2nd on which date the record indicates that counsel conferred with Testamark and that he requested medical aid for him. On November 4th the court granted this request and Testamark was hospitalized.

The trial commenced on January 4, 1971. Testamark was convicted of Robbery, First Degree, Attempted Assault, Second Degree, Petit Larceny and Possession of a weapon as a Felony.

In granting the writ the District Court based its decision largely on an assumed inadequacy of preparation for trial by Testamark's counsel and counsel's failure "to develop any line of defense." Alleged failure to interview witnesses and to speak with hospital officials are also cited.

■ A brief review of the benefits of counsel received by Testamark is illuminating. Mrs. Cropper almost immediately conferred with Testamark and no suggestion is made that he did not disclose all the facts. Thereafter, both she and Lipton did what they could to bargain for a plea. From October 27th on, Lipton responded that he was ready for trial. Parenthetically, Lipton's current misgivings with respect to the adequacy of his preparation would seem to be in conflict with his court room representations of readiness. Absent proof, it cannot be presumed that these representations were false. Lipton personally visited the scene of the crime to prepare for cross-examination. The fact that he did not actually cross-examine at trial was the result of Testamark's demands. A Huntley hearing was held in advance of trial. Lipton moved for exclusion of witnesses which motion was granted. The facts will not support the conclusion that there was a total failure to prepare for Testamark's defense. Nor is there any indication in the trial record in the State Supreme Court that Testamark did not receive a fair trial. To the contrary, Legal Aid did all that it could under the circumstances.

Testamark makes much of the fact that he was not frequently visited by his counsel. The initial interview is conced-

ed, another interview occurred on the eve of trial. He was before the court with counsel on various calendar calls and was aware of all plea bargaining efforts.

As the Appellate Division said when Testamark's case was on appeal:

> Seldom has this court examined a record where the defendant's guilt is so clearly demonstrated.

People v. Testamark, 40 A.D.2d 645, 336 N.Y.S.2d 482 (First Dept. 1972)

The facts of the attempted robbery were not capable of contradiction. Testamark entered a crowded store with a gun, he was seen by many witnesses, he was wounded in an exchange of shots with the store owner and was immediately apprehended. As we recently said in United States v. Katz, 425 F.2d 928, 930 (1970), under somewhat similar circumstances:

> there is not too much the best defense attorney can do.

*See also* United States ex rel. Crispin v. Mancusi, 448 F.2d 233, 234 (2d Cir.), cert. denied, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 288 (1971); United States ex rel. Marcelin v. Mancusi, 462 F.2d 36, 43 (2d Cir. 1972), cert. denied, 410 U.S. 917, 93 S.Ct. 977, 35 L.Ed.2d 279 (1973); United States v. Garguilo, 324 F.2d 795, 796 (2d Cir. 1963).

Petitioner claims that the evaluation of trial counsel's adequacy must be done in the abstract and, furthermore, that the failure of counsel to confer with him regularly establishes prima facie proof that he received ineffective assistance. He argues that to judge the quality of his representation in light of the "strength of his case" (as disclosed by the record) defies logic because if, in fact, he received inadequate representation the record naturally would not represent his case fairly. Petitioner supports his argument with vigorous references to many decisions, most notable among them is United States ex rel. Thomas v. Zelker, 332 F.Supp. 595 (S.D.N.Y.1971). The weakness in petitioner's position is that in the *Thomas* case,

and in the others cited by petitioner, the prosecution's evidence was much weaker than in the case *sub judice*. This is not an irrelevant fact as petitioner argues. In *Thomas* Judge Frankel granted the writ only after finding that "the infection [lack of adequate representation] now discovered strikes at the heart of the record." 332 F.Supp., at 601. For Judge Frankel to decide that a matter "strikes at the heart of the record," he would necessarily have had to gauge the strength, or at least the strong points, of the prosecution's case.

The most "liberal" standard presently being applied by the federal courts in these matters states that to obtain relief a petitioner must show that "there has been gross incompetence of counsel and that this has in effect blotted out the essence of a *substantial defense* either in the District Court or on appeal." Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 116–117 (1967). Testamark has never suggested that *any* defense was paralyzed or even impaired by counsel's alleged lack of competence. Testamark does not suggest that there was a line of defense which counsel failed to develop or that there were witnesses who would have been favorable to the defense. He does not suggest that counsel did not mull over and carefully weigh the best tactics under the circumstances. All that he did was to complain of lack of frequent visitation and to express a desire to have other counsel.

■ Because the quality of legal representation cannot be abstractly measured without reference to the merits of a defendant's case, and because there appears to be absolutely no argument to be made for the defendant under the circumstances, there is no basis on which the representation of the Legal Aid Society can be criticized.

■ Finally, Testamark's actions at trial constituted a waiver of his right to counsel. He was given the choice between proceeding with appointed counsel, or proceeding *pro se*. He chose to do neither. After each witness testified for the State, Testamark was given the

opportunity to cross-examine or have Lipton step back into the case. He spurned these repeated opportunities to represent himself or to be represented by counsel. Thus, on June 22, 1970, Testamark told the court, "I would like an Appellate Division lawyer." (referring thereby to counsel assigned from a list available to the Appellate Division). Since he already had counsel, the court denied this request. At the opening of the trial and even on the second day, Testamark renewed his motion for other counsel and informed the court that he had dismissed Lipton. Testamark insisted that Lipton not represent him and that he not sit next to him or even be in court. Lipton nevertheless remained in the courtroom to assist if called upon.

Testamark's refusal to participate in the trial or confer with counsel were of his own choosing. The court gave him the opportunity to proceed with counsel or to represent himself. Actually the court gave him both because Lipton was available at all times.

Order granting the writ of habeas corpus reversed with instructions to dismiss the petition and vacate the writ.