782 F.2d 1042
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ANTHONY MARK MORTON, Petitioner-Appellant
v.
DALE FOLTZ, Respondent-Appellee.
 84-1813
 United States Court of Appeals, Sixth Circuit.
 12/11/85
 
 Before: LIVELY, Chief Circuit Judge; MARTIN, Circuit Judge; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Anthony Mark Morton appeals the district court's denial of his application for writ of habeas corpus. On January 16, 1981, Morton was convicted of armed robbery, assault with intent to commit criminal sexual conduct, and felonious assault. He received sentences of thirty to sixty years for the robbery conviction, six to ten years for the criminal sexual conduct conviction, and two to four years for the felonious assault conviction. The Michigan Court of Appeals affirmed Morton's convictions and the Michigan Supreme Court denied his application for leave to appeal.
 
 
 2
 Morton claims in his application for writ of habeas corpus that he has been denied effective assistance of counsel in violation of the sixth amendment of the Constitution, and that his conviction for robbery was not supported by sufficient evidence. The district court denied the writ after considering both of these claims as well as an additional claim, no longer pursued by Morton, that the trial court abused its discretion by admitting highly prejudicial evidence of similar acts. We affirm the denial of the writ.
 
 
 3
 Morton, an indigent defendant, stated on the first day of his trial that he did not want to be defended by the court-appointed attorney, Curtis. Morton stated that he had not communicated with Curtis in the last four months though Morton had written Curtis. Curtis confirmed that he had not communicated with Morton but explained that Morton's mother told him that another attorney, Campbell, had been retained to try the case. Curtis explained that he did not realize that he, Curtis, was to defend Morton until the day before the trial when Campbell delivered the file to him. However, no one filed a change of attorney request with the court prior to trial, nor did Curtis file a motion to withdraw prior to the trial date. Curtis did tell the court clerk, on the day before trial, that he was familiar with the case and thought he could proceed with it. Curtis had defended Morton in a case intimately connected with the one at hand. Morton stated that he did not know about Campbell but that he wanted Curtis removed because of a 'misunderstanding of the law between me and him.' Curtis explained that he thought there was a breakdown of the attorney-client relationship to the extent that he could not maintain Morton's confidence because Morton had told him on the eve of trial that Morton felt that Curtis had 'sold [Morton] out last time.' The trial judge denied the request to substitute attorneys. The court informed Morton of his right to either use his assigned attorney or defend himself. He refused to defend himself but did not allow his attorney to take action on his behalf. There was no challenge of jurors, opening, closing, or cross-examination. Curtis moved several times during the trial to be allowed to withdraw, but this request was not granted until Morton's sentencing.
 
 
 4
 Morton claims that the trial court's refusal to substitute counsel was a denial of his sixth amendment right to effective assistance of counsel. As an indigent defendant, Morton did have the right to be represented by counsel, Powell v. Alabama, 287 U.S. 45 (1932), but he did not have the right to reject an assigned counsel without good cause. United States v. Young, 482 F.2d 993, 995 (5th Cir. 1973); United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972), cert. denied, 410 U.S. 926 (1973).[1] This restraint is to insure that the right is not 'manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.' United States v. Bentvena, 319 F.2d 916, 936 (2d Cir.), cert. denied, 375 U.S. 940 (1963). Good cause, which Morton must have shown to have obtained a substitution of counsel, is defined as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict that leads to an apparently unjust verdict. Wilson v. Mintzes, 761 F.2d 275, 280 (6th Cir. 1985); United States v. Morris, 714 F.2d 669, 673 (7th Cir. 1983); United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982); McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981), cert. denied, 456 U.S. 917 (1982); United States v. Hart, 557 F.2d 162, 163 (8th Cir.), cert. denied, 434 U.S. 906 (1977); Calabro, 467 F.2d at 986. A trial judge has a duty to inquire into the reasons that an accused is dissatisfied with his attorney. If the reasons are stated to the court, the court can rule on the matter. McKee, 649 F.2d at 934; Young, 482 F.2d at 995; Brown v. Craven, 424 F.2d 1166, 1169-70 (9th Cir. 1970); Brown v. United States, 264 F.2d 363, 369 (D.C. Cir.) (en banc) (Burger, J., concurring), cert. denied, 360 U.S. 911 (1959).
 
 
 5
 Morton's stated reason for wanting Curtis replaced was a 'misunderstanding of the law' between Morton and Curtis. Morton also noted a lack of communication with Curtis. Curtis offered the explanation that Morton did not trust him because of his actions in another case involving Morton. The record fully supports the trial court's and the district court's conclusions that Morton did not state a good cause for an attorney substitution. The Michigan Court of Appeals found that
 
 
 6
 [c]ounsel was appointed several months before the breakdown in communications occurred and participated in various pretrial matters, including the preliminary examination, several pretrial motions, and a pretrial conference. Moreover, the previous trial in which counsel participated was intimately connected with this case. Complainant here appeared as a similar acts witness in the previous case, while complainant in the previous case appeared as a similar acts witness here. The record therefore supports counsel's statement that he was prepared to try the case.
 
 
 7
 State court findings of basic, primary, or historical fact made in the course of deciding an ineffectiveness claim are entitled to a presumption of correctness under 28 U.S.C. Sec. 2254. Summer v. Mata, 449 U.S. 539 (1981); Haggins v. Warden, Fort Pillow State Farm, 715 F.2d 1050, 1055 (6th Cir. 1983), cert. denied, ---- U.S. ----, 104 S. Ct. 980 (1984). Morton's statement that Morton and his attorney disagreed about the law in light of the attorney's statement that he was ready to proceed, and the Michigan court's finding that the attorney was in fact prepared to try the case, is not good cause. A criminal defendant does not have a constitutional right to an attorney with whom he agrees. See, e.g., McKee, 649 F.2d at 931; Hart, 55 F.2d at 163.
 
 
 8
 Morton's claim of lack of communication and appointed attorney Curtis' suggestion of a lack of confidence are likewise insufficient causes to require substitution of attorneys. Loss of trust is a consideration in determining good cause. However, a defendant must provide legitimate reasons for the lack of confidence. McKee, 649 F.2d at 932. See Hart, 557 F.2d at 163; Young, 482 F.2d at 996; Calabro, 467 F.2d at 986. Morton did not expound on his attorney's suggestion of a trust problem. The lack of communication prior to trial, of which Morton complained, did not necessarily affect his defense. The assigned attorney stated that he was familiar with the case and was ready to go forward despite the lack of communication that occurred prior to trial, and the Michigan Court of Appeals found that Curtis was prepared. The attorney explained that the prior lack of communication occurred because he, the appointed attorney, thought Morton's mother had obtained another counsel. This misunderstanding no longer existed at the time of the substitution request. Morton, even when asked his reason for requesting a substitute attorney, did not explain why he could not communicate with the assigned attorney Curtis during the trial. The Michigan Court of Appeals found that Morton 'refused to participate in the trial and expressly instructed his appointed counsel not to participate.' The Michigan court stated that Morton had 'only himself to blame for any detrimental effect on his defense.' In light of these findings which we must presume are correct, Sumner v. Mata, 449 U.S. 539 (1981), granting new counsel to Morton bestows upon him the unrestrained power to delay his trial. See McKee, 649 F.2d at 932. Morton's sixth amendment right to effective assistance of counsel was not impaired, nor was there an abuse of discretion in denying the substitution. Morris, 714 F.2d at 673.
 
 
 9
 Because the trial court's refusal to grant substitute counsel was not unconstitutional, the trial court did not err by requiring that Morton defend himself or use Curtis, the assigned attorney. Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir. 1976); United States ex rel. Testamark v. Vincent, 496 F.2d 641, 643-44 (2d Cir. 1974), cert. denied, 421 U.S. 951 (1975). Morton chose not to defend himself but also refused to allow the assigned attorney to actively defend him. Such a refusal to proceed with appointed counsel is a voluntary waiver of the right to counsel. Maynard, 545 F.2d at 278; Vincent, 496 F.2d at 643; Kates v. Nelson, 435 F.2d 1085, 1088 (9th Cir. 1970).
 
 
 10
 Morton's second basis for his writ of habeas corpus application is that the prosecution did not properly prove that Morton was armed. The Michigan armed robbery statute provides that the perpetrator must be 'armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon.' Mich. Comp. Laws Sec. 750.529. If 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' then sufficient evidence existed for conviction, Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 
 11
 Here Justine Givens, an elderly woman who was the complainant and the state's primary witness, testified that a man had knocked at her door stating that he was her son at approximately 4:00 or 4:30 a.m. on May 11, 1980. She opened the door and he entered. The man grabbed her arm which was held behind her back and stated, 'I'm going to rape you and kill you, old lady.' She saw that 'something was flashing in his hand' but she did not know what it was. He forced her onto the bed and raised her nightgown. As they were wrestling, the man discovered money in a drawer. Givens stated that he grabbed the money and she escaped. Givens testified that she positively identified Morton as the assailant in a police photo after the attack. A rational trier of fact could find that this evidence proved beyond a reasonable doubt that Morton was armed with 'an article used or fashioned in a manner to lead [Ms. Givens] to reasonably believe it to be a dangerous weapon.' Mich. Comp. Laws Sec. 750.529.
 
 
 12
 Morton's petition for habeas corpus is denied.
 
 
 
 [1]
 This Court has recently held that the test for absence of effective assistance of counsel as found in Strickland v. Washington, ---- U.S. ----, 104 S. Ct. 2052 (1984), does not apply to motions for substitution of counsel. Wilson v. Mintzes, 761 F.2d 275, 283 (6th Cir. 1985)