284 N.J. Super. 142 (1995)
663 A.2d 1378
STATE OF NEW JERSEY, PLAINTIFF,
v.
JAMES WILLIAMS, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided March 20, 1995.
*146 Audrey Bomse, for defendant.
John J. Fahy, Bergen County Prosecutor, for plaintiff (Patricia Baglivi, Assistant Prosecutor, of Counsel and on the brief).
MOSES, P.J.S.C.
On December 19, 1986, defendant, James Williams, was convicted in New Jersey Superior Court of armed robbery, possession of a weapon for an unlawful purpose, possession of a prohibited weapon and possession of a weapon without the requisite permit. On July 31, 1987, the trial judge, Hon. James Madden, J.S.C., granted the State's motion for the imposition of an extended term, pursuant to N.J.S.A. § 2C:44-3a, and sentenced defendant to fifty *147 years imprisonment with a twenty-five year period of parole ineligibility.
Defendant has submitted numerous appeals and petitions for post-conviction relief over the years. Defendant's motion for vacation of the extended term and for resentencing was denied on October 9, 1987. On November 6, 1989, the Appellate Division affirmed defendant's conviction. A petition for certification to the Supreme Court was denied on February 28, 1990.
On February 6, 1991, Judge Madden denied defendant's first petition for post-conviction relief and on April 2, 1991, he denied defendant's second petition. On July 5, 1991, Judge Madden denied a motion for reconsideration of the denial of defendant's second petition.
On January 8, 1993, the Appellate Division ruled on a consolidated appeal of defendant's motions. The Appellate Division found defendant's arguments to be without merit and affirmed Judge Madden's denials of the two post-conviction relief petitions and of the motion for reconsideration.
In each petition for post-conviction relief, including this one, defendant argued that Judge Madden improperly considered his prior Canadian conviction, which he asserts was uncounseled, to support the imposition of an extended term.
The prior denials of defendant's petitions for post-conviction relief and motion for reconsideration were all based, primarily, on defendant's failure to prove, by a preponderance of the evidence, that his prior Canadian conviction was uncounseled. Defendant has filed the instant petition based on recently obtained evidence; specifically, transcripts from the 1970 Canadian proceedings.
On April 29, 1994, this court held a hearing on defendant's present petition for post-conviction relief and rejected the State's argument that defendant's claim was procedurally barred by R. 3:22-5 and 3:22-12. The court also rejected the State's argument that defendant's petition was barred because the arguments posited were, or could have been, raised in a prior proceeding.

*148 FACTS

On July 20, 1970, defendant was convicted of robbery in the Court of General Sessions of the Peace, County of York, Ontario, Canada. The Canadian transcripts show that the proceedings lasted for three and one-half days, between July 15 and July 20, 1970. The first day and a half consisted of a voir dire concerning the admissibility of defendant's confession, which he alleged was coerced. During the voir dire the "Crown" called eight witnesses. All were cross-examined by defendant's attorney. In addition, the defense called two witnesses and defendant also testified. After the voir dire was completed, the court ruled that the confession was not coerced and was admissible in evidence.
The trial commenced on July 16, 1970. On the first day, the "Crown" called six witnesses, all of whom were cross examined by defendant's attorney. On July 17, 1970, the "Crown" called two witnesses, both of whom were cross examined by defendant's counsel.
On July 20, 1970, when the trial resumed, defendant dismissed his attorney. After the dismissal, the "Crown" called five more witnesses. Defendant declined to cross examine any of the witnesses except the eye-witness to the robbery. Defendant was convicted and on August 17, 1970, was sentenced to nine years in the penitentiary, but was reduced to eight years for time served.
This Canadian conviction was used by the New Jersey Superior Court for the imposition of an extended term, pursuant to N.J.S.A. § 2C:44-3a, at defendant's sentencing on July 31, 1987.
Defendant's present petition for post-conviction relief urges that the Canadian conviction was obtained in violation of his right to counsel, and was therefore improperly considered by the New Jersey court to support the imposition of an extended term.

INTRODUCTION
R. 3:22-1 provides, "Any person convicted of a crime may ... file ... a petition for post-conviction relief." R. 3:22-2 holds that a petition for post-conviction relief is cognizable if there has been:

*149 (a) Substantial denial in the conviction proceedings of defendants's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey; [or] (c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law.
The petitioner's burden of proof in establishing his right to post-conviction relief is the same as that borne by a civil suitor; namely, a fair preponderance of the credible evidence. State v. Zold, 105 N.J. Super. 194, 203, 251 A.2d 475 (Law Div. 1969), aff'd, 110 N.J. Super. 33, 264 A.2d 257 (App.Div.), certif. denied, 57 N.J. 131, 270 A.2d 34 (1970). The petitioner must be prepared to establish by a preponderance of the credible evidence that he is entitled to the requested relief. State v. Mitchell, 126 N.J. 565, 579, 601 A.2d 198 (1992). Specific facts must be alleged and articulated, which, if believed, would provide the court with an adequate basis on which to rest its decision. Ibid. Specifically, this defendant must show, by a preponderance of the evidence, that Judge Madden's consideration of his Canadian conviction to extend his sentence was either a substantial denial of his rights under the federal or New Jersey Constitutions and/or resulted in the imposition of a sentence in excess of, or not in accordance with, the sentence authorized by law.

STATE'S MOTION FOR RECONSIDERATION
On April 29, 1994, this judge ruled that defendant's petition is not barred by R. 3:22-5 and 3:22-12. The State requests that the court reconsider her decision. The State argues that, pursuant to R. 3:22-12, defendant's petition for post-conviction relief is time barred. Williams was sentenced on July 31, 1987, and this petition was filed on January 12, 1994, well outside the five year limitation set by the rule.
R. 3:22-12 provides:
A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.
*150 The State argues, first, that the rule serves to respect the need for finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The State also argues that defendant has made no showing that the delay in filing the petition and its supporting documents was due to excusable neglect. The Assistant Prosecutor argues that the illegal sentence exception does not apply here because defendant's other convictions (1968 and 1969 Maryland convictions for larceny, 1969 Alabama conviction for assault and battery, 1979 New York conviction for unauthorized use of a vehicle, and 1985 New York conviction for grand larceny), provide more than ample support for the extended term.[1] Because this defendant thus qualifies for extended term sentencing, even if the Canadian conviction is excluded, there is no reason to relax the procedural bar, pursuant to R. 1:1-2.
Defendant argues that the illegal sentence exception applies to him, because his sentence was founded (at least in part), upon misinformation of a constitutional magnitude, and there was a reasonable probability that the defective prior conviction may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed. See United States v. Tucker, 404 U.S. 443, 445-47, 92 S.Ct. 589, 590-92, 30 L.Ed.2d 592, 595-96, (1972). Defendant argues that if Judge Madden had been aware at sentencing of the constitutional infirmity of his prior Canadian conviction, the factual circumstances of his background would have appeared in a different light.
*151 This court concludes that the State's contention, that defendant failed to show that the delay in filing this petition was due to excusable neglect, is without merit. Defendant has made repeated attempts, through counsel and pro se, to raise the issue of the improper imposition of the extended term based on an uncounseled Canadian conviction. None of the several attorneys who have represented defendant, either at trial or on appeal, ever thoroughly investigated his claim concerning his prior uncounseled conviction and were thus unable to substantiate the improper use of that conviction in the imposition of this extended term.
After the Appellate Division, on the basis of the record before it, affirmed the trial court's denials of both petitions for post-conviction relief and the motion for reconsideration, defendant's newly retained attorney, Ms. Bomse, contacted Canadian authorities requesting specific information concerning whether defendant was represented by counsel in 1970. After receiving conflicting information from Canada regarding defendant's representation, she filed the present petition on or about January 3, 1994. Counsel finally received the transcripts from the 1970 Canadian proceedings in July 1994, and pursued the petition, believing defendant could now prove by a preponderance of the available evidence that his prior conviction was uncounseled.
Generally, courts require that when a defendant claims "excusable neglect" for the filing of a petition beyond the time prescribed by the rule, the petition itself must allege those facts supporting his claim. Mitchell, supra, 126 N.J. at 576-77, 601 A.2d 198; State v. Morales, 120 N.J. Super. 197, 293 A.2d 672 (App.Div. 1971), cert. denied, 62 N.J. 77, 299 A.2d 75 (1972). Defendant alleged facts supporting his claim in each of his filings. None of defendant's previous attorneys attempted to clarify the circumstances surrounding his Canadian conviction. When defendant's present attorney attempted to resolve the issue by contacting the Canadian authorities, she was initially given contradictory *152 information. Therefore, any neglect on the part of defendant is excusable.[2]
The State's second contention that the illegal sentence exception to the R. 3:22-12 time bar is inapplicable, because defendant's other convictions provide ample support for the extended term, is equally without merit.
In United States v. Tucker, supra, the Supreme Court held that resentencing is required where there is a "reasonable probability that [a] defective prior conviction may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed." 404 U.S. at 445-46, 92 S.Ct. at 590-92, 30 L.Ed.2d at 595. The record reveals that Judge Madden specifically considered defendant's Canadian conviction before imposing sentence upon him. In fact, Judge Madden stated that if it were demonstrated to him that defendant had not been represented by counsel, then defendant should not have been sentenced to an extended term. Defendant is thus alleging that his sentence is illegal. R. 3:22-12 allows a petition to correct an illegal sentence to be filed at any time.
Even assuming, arguendo, that R. 3:22-12 was a procedural bar, this case presents just the type of situation in which a court may use its discretion under R. 1:1-2 to relax the rules. In State v. Mitchell, supra, the Supreme Court, in the context of a post-conviction relief petition, discussed when the five year limitation should be relaxed:
The court should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an "injustice" sufficient to relax the time limits ... If the petitioner *153 articulates facts that demonstrate a serious question about ... the propriety of the sentence imposed and is prepared to provide factual evidence to support it, then sufficient grounds for relaxing the Rule might exist. In other words, a court should determine that the procedural rule as applied is unjust only when a significant liberty interest is at stake and the petitioner has offered something more than a bare allegation that that is so.
[126 N.J. at 580, 601 A.2d 198.]
The court in Mitchell then referred to State v. Marshall, 244 N.J. Super. 60, 581 A.2d 538 (Law Div. 1990), where the court indicated it would relax the rules if defendant could show that he had received an enhanced sentence based on an unconstitutionally imposed sentence (without representation). The State argues that, unlike Williams, there was no indication in Marshall that the defendant had other prior convictions which would support the persistent offender extended term. Therefore, there is no "injustice here warranting relaxation of the time bar." The Supreme Court's decision in Tucker renders this argument without merit. Because a significant liberty interest is at stake and because defendant has offered more than a mere allegation that his Canadian conviction was uncounseled, R. 3:22-12 should not act as a procedural bar to defendant's petition.
The State argues that defendant's petition should be barred, pursuant to R. 3:22-5, because these specific arguments were both made on direct appeal and in his two earlier petitions for post-conviction relief. The State also argues that the law of the case doctrine precludes this court from revisiting the issue of defendant's extended term.
Defendant responds that neither R. 3:22-5 nor the law of case doctrine act as a bar to this judge considering the instant petition because it raises an issue of constitutional magnitude concerning the fundamental right to counsel.
R. 3:22-5 provides:
A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.
*154 The comment to the rule indicates that this rule is relaxable when the "constitutional problems raised are of substantial import." State v. Johns, 111 N.J. Super. 574, 576, 270 A.2d 59 (App.Div. 1970). The issue raised by defendant is exactly the issue addressed in Marshall, where the court relaxed R. 3:22-4, even though that defendant failed to raise the issue on direct appeal. Further, although defendant did raise the question of the validity of his Canadian conviction in his prior appeal and petitions, the record, as it then stood, precluded a full determination of the issue. At the time of defendant's appeal and earlier petitions, the status of his Canadian conviction was unclear. The transcripts from the Canadian proceedings, now available, allow Williams to finally address the merits of his contention that the conviction was uncounseled. Therefore, R. 3:22-5 will be relaxed.
Similarly, the State's argument that the law of the case doctrine prohibits this court from revisiting the issue of defendant's extended term is rejected. The State argues that under the law of the case doctrine, decisions of law made in a case should be respected by all other equal or lower courts during the pendency of that case. The State asserts that since the Appellate Division addressed the merits of defendant's claim this court should not consider defendant's petition for post-conviction relief.
The record, as it then stood, precluded the Appellate Division from fully considering the merits of defendant's claim. See Daniel v. State Dept. of Transp., 239 N.J. Super. 563, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990), in which the appellate court found the law of the case doctrine inapplicable where "substantially different evidence" is presented at a subsequent trial. Id. at 582, 571 A.2d 1329.
The State argues that defendant's petition should be dismissed because the collateral attack on his prior conviction must be made in the court which renders it, relying on Marshall, supra, 244 N.J. Super. at 67, 581 A.2d 538, and Custis v. United States, ___ U.S. ___, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). The State's reliance on these cases is misplaced.
*155 In Marshall, the court stated that while a defendant may not raise, on collateral attack, issues that might reasonably have been raised on direct appeal, there are exceptions to this general rule. A ground not raised on direct appeal may be raised on collateral review if denial of the petition would be contrary to the Constitutions of the United States or the State of New Jersey, or would result in fundamental injustice. Marshall, 244 N.J. Super. at 65, 581 A.2d 538. The court distinguished between convictions which are presumptively void, and convictions which are not presumptively void and held that only convictions which are not presumptively void should be challenged in the jurisdiction that entered the conviction. Id. at 66-67, 581 A.2d 538. (finding that defendant's application to have his Oklahoma conviction declared unconstitutional must be made in Oklahoma where defendant alleged that his guilty plea was entered involuntarily). However, "[w]here the record of a prior conviction shows on its face that a defendant was not represented by counsel, the prior conviction is presumptively void." Id. at 66, 581 A.2d 538, and the rule that the petitioner must challenge the prior conviction in the original jurisdiction does not apply. See also United States v. Cwens, 15 F.3d 995, 1001 (11th Cir.1994) (court may conduct a collateral review of a prior conviction when the defendant shows that the prior conviction is presumptively void, which includes prior uncounseled convictions).
Defendant alleges that his previous conviction was uncounseled. In the certified documents before Judge Madden concerning defendant's Canadian conviction, no defense counsel was listed. Further, at defendant's motion for reconsideration of Judge Madden's Order denying Post-Conviction Relief, defense counsel put on the record the fact that "there is no mention whatsoever (in the Canadian conviction documents) of an attorney having represented Williams in that matter." Therefore, as the conviction stood before Judge Madden, it could be considered presumptively void and the Marshall rule inapplicable. In addition, the Marshall court stated that a ground not raised on direct *156 appeal may be raised on collateral review if denial of the petition would result in fundamental injustice. At this stage of the game, requiring defendant to pursue his conviction in Canada would be fundamentally unjust.
Finally, in Custis v. United States, supra, the Supreme Court held that a defendant has no right in a federal sentencing proceeding to attack the validity of prior state convictions, "with the sole exception of convictions obtained in violation of the right to counsel" because there is a historical basis in our jurisprudence of collateral attacks for treating the right to have counsel appointed as unique. ___ U.S. at ___, 114 S.Ct. at 1737-38, 128 L.Ed.2d at 527-29.
Accordingly, the State's request for reconsideration of the court's decision granting defendant a hearing on his Post-Conviction Relief Petition is denied in toto.

DEFENDANT'S POST CONVICTION RELIEF PETITION
Neither the State's nor defendant's briefs address the threshold issue of whether a foreign conviction may be used to extend a sentence under N.J.S.A. § 2C:44-3a.[3]
Treatment of foreign convictions in repeat offender statutes varies: eight states explicitly authorize their consideration[4], twenty *157 states implicitly disallow it[5], and twenty-two states, including New Jersey, have ambiguously worded statutes.[6]
N.J.S.A. § 2C:44-3 Criteria for sentence of extended term of imprisonment provides:
The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds one or more of the grounds specified in this subsection a., b., or f. of this section.
a. The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.
N.J.S.A § 2C:44-4c provides:

*158 (c) Prior conviction in another jurisdiction. A conviction in another jurisdiction shall constitute a prior conviction of a crime if a sentence of imprisonment in excess of 6 months was authorized under the law of the other jurisdiction. (emphasis added).
There are no reported cases in New Jersey expressly allowing or disallowing the use of foreign convictions to extend a sentence under N.J.S.A. § 2C:44-3a[7]. However, the term "another jurisdiction" in N.J.S.A. § 2C:44-4c can be interpreted to encompass convictions obtained in a foreign jurisdiction.[8] New York's repeat offender statute is similar to New Jersey's in that it encompasses felonies from "any other jurisdiction."[9] The New York Court of Appeals interpreted the statute to include foreign convictions. People v. Le Grand, 439 N.Y.S.2d 695, 81 A.D.2d 945 (App.Div. 1981) (acknowledging that a Canadian conviction could be used under the statute although discounting the specific conviction because elements of the foreign crime did not constitute a crime in New York.)
Under the Federal Sentencing Guidelines, foreign convictions may not be used to compute a defendant's criminal history category, but may be used for upward departures from the otherwise applicable range. U.S.S.G. §§ 4A1.2(h), 4A1.3(a). The Second Circuit Court of Appeals has noted that "Congress, while it has not remained entirely silent, has chosen to assign to foreign crimes a rather limited role." United States v. Azeem, 946 F.2d *159 13, 17 (2d Cir.1991) (excluding drug activities in Egypt from the base calculation of the defendant's sentence). The court recognized the complexities that would be generated if foreign crimes were included in the base offense level calculation. For example, courts would first have to decide whether a foreign arrest or conviction is necessary for inclusion and, if so, whether it should be disregarded if plainly unconstitutional under our law. Ibid. However, the discretionary use of foreign convictions to increase a sentence from an initially determined base offense level calculation is permitted regardless of the foreign conviction's constitutional validity. "Convictions which the defendant show to have been constitutionally invalid may not be counted in the criminal history score ... Nonetheless, any conviction that is not counted in the criminal history score may be considered ... if it provides reliable evidence of past criminal activity." United States v. Soliman, 889 F.2d 441, 444 (2d Cir.1989) (affirming trial judge's consideration of the defendant's Italian drug conviction in sentencing).
Given the New York analysis of an almost identical term in its repeat offender statute and given the federal utilization of foreign convictions to enhance sentences, I conclude that the N.J.S.A. § 2C:44-4c phrase "Prior conviction in another jurisdiction" allows the utilization by a judge of all other convictions, from sister states and foreign countries, to determine whether to impose an extended term.
Since a foreign conviction may be used to extend a sentence under N.J.S.A. § 2C:44-3a, the next question is whether the foreign conviction must comply with strict American constitutional standards.
It is well settled that a prior conviction obtained in the United States cannot be used to enhance the punishment for a later conviction if the prior conviction was obtained in a constitutionally impermissible manner. Tucker, supra, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592; Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). What is not clear, however, is whether a prior conviction obtained in a foreign jurisdiction is subject to American *160 constitutional standards before it can be used to enhance a sentence.
In United States v. Fleishman, 684 F.2d 1329, 1344 (9th Cir.1982), appellants argued that they were improperly sentenced due to the district court's expressed consideration of their prior, uncounseled Mexican convictions for drug-related offenses. The appellants relied on Tucker, where that defendant was entitled to resentencing because his sentence had been enhanced by a judge who was unaware that some of his prior convictions were uncounseled and therefore unconstitutional. Tucker, supra, 404 U.S. at 448, 92 S.Ct. at 592, 30 L.Ed.2d at 597. The Ninth Circuit construed Tucker as requiring resentencing when three requirements are met: (1) a prior conviction rendered invalid by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); (2) the sentencing judge's mistaken belief that the prior conviction was valid; and (3) enhancement of the defendant's sentence because of the prior conviction. Fleishman, supra, 684 F.2d at 1346 (citing Owens v. Cardwell, 628 F.2d 546, 547 (9th Cir.1980); Farrow v. United States, 580 F.2d 1339, 1345 (9th Cir.1978)). The Fleishman court held that, even assuming the first and third requirements were met, resentencing was not required because the district court was not under the mistaken impression that the Mexican convictions were constitutionally valid under United States law. Fleishman, supra, 684 F.2d at 1346. "[T]he district court enhanced the appellants' sentences because of the fact that they had been involved in drug-related offenses and had not learned from their experiences. Consideration of the appellants' prior involvement with cocaine is permissible." Ibid.
The United States District Court for the Eastern District of Pennsylvania has adopted a fundamental fairness approach to determine whether foreign convictions may be used for sentence enhancement. In United States v. Moskovits, 784 F. Supp. 183 (E.D.Pa. 1991), the court considered whether a defendant's prior uncounseled conviction in Mexico could be used as a basis for sentence enhancement. The District Court considered the Fourth *161 Circuit's decision in United States v. Wilson, 556 F.2d 1177, 1178 (4th Cir.), cert. denied, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 481 (1977), where the Court of Appeals held that a conviction obtained in a West German court without a jury trial could be used to impeach the defendant's credibility. In Wilson, the court found "[t]he only question ... is whether the German legal system is so fundamentally unfair that a conviction obtained under it is inadmissible. The defendant has not shown that the German legal system lacks the procedural protections necessary for fundamental fairness." Wilson, supra, 556 F.2d at 1178. However, the Wilson court noted, in dicta, that the defendant was not claiming that he lacked the assistance of counsel during his trial in Germany, thus implying that the court may have reached a different result if the defendant had made such a claim. Ibid.
Drawing on that dicta, the Moskovits court held that reliance on a foreign criminal conviction to enhance a sentence is impermissible where there was a failure to provide counsel at crucial stages of the previous proceeding. Moskovits, supra, 784 F. Supp. at 190. The court noted that this conclusion could also be reached as a matter of statutory implication.
[The] statute that Congress passed, which imposes a ten-year minimum via sentence enhancement in reliance on foreign drug convictions, ... implies that the foreign conviction shall be one which meets norms of fundamental fairness as perceived by United States courts. The participation of counsel at crucial stages of the criminal proceeding is one such fundamental norm.
[Ibid.]
The court concluded that the Mexican procedures, which resulted in a conviction and sentence of the defendant, could not be regarded as a valid conviction and sentence from the perspective of a United States court since under Mexican criminal procedure, the defendant did not have the right to have the assistance of counsel at a preliminary Careo hearing.[10]Id. at 191. Accordingly, *162 the court directed that the defendant be resentenced since the sentencing judge failed to fully consider the constitutional integrity of the Mexican conviction from the perspective of American standards of fundamental fairness. Id. at 192.
This fundamental fairness approach to evaluate prior convictions for enhancement has also been applied to convictions obtained in other states. United States v. Wilkins, 303 F.2d 883, 885 (2d Cir.1962) (finding that where a defendant was not represented by counsel in a prior proceeding which resulted in a conviction, the state must demonstrate that the previous proceedings were not fundamentally unfair before the out of state conviction may be used for sentence enhancement).[11]
A crucial component of fundamental fairness is whether defendant knowingly and intelligently waived his right to counsel at his trial for armed robbery in Canada. The State argues that the Canadian transcripts do not show that defendant's waiver in the Canadian proceeding was unintelligent or unknowing. The State supports this argument by noting that defendant had counsel for a significant part of the trial, that defendant had the opportunity to speak with his appointed counsel when he told the court that he wanted to discharge his lawyer and that defendant's discharge of counsel was a deliberate strategic maneuver. The State points *163 out that defendant was represented by four different attorneys in the New Jersey case and ultimately discharged all four from representing him.
Defendant argues that there is a presumption against waiver. That is, to constitute a valid waiver, a court must conduct an extensive inquiry and make a judicial finding, provide standby counsel and require defendant to affirmatively choose between appointed counsel or proceeding pro se.
Defendant dismissed his attorney on July 20, 1970, the third day of the trial. The following colloquy took place:
[DEFENDANT]: My lawyer will be dismissed from this case. I no longer want him to represent me. I am not coming in here again of my own free will pertaining to this case, because there is no justice at all. This is a pretence. This is not even real. This is beyond the realm of understanding, reason and logic for this to occur. I cannot see how or why. I don't understand it  the procedure or nothing else....
[The Court offers to take a recess but Defendant's counsel indicates that a recess is not necessary. Defendant's counsel does, however, confer with his client.]
[DEFENDANT]: Your Honour, if I may clarify my statement: To clarify my statement, I have nothing to fight. I have no defense to present to the Court. I have nothing to say because of where I was. I have nothing to disprove; nothing that has been said in here  I have no witnesses  no means to support anything that I have said. All the people that gave testimony concerning this trial work for the establishment. No man will say anything to go against who he works for because of his job  he would lose it. I cannot fight it. I have nothing to fight it with.
[COURT]: Well, Mr Williams, just so I understand this thing completely  are you or are you not discharging your lawyer now?
[DEFENDANT]: My lawyer is discharged. I have discharged him. I have no interest in this case. Nothing whatsoever.
[COURT]: All right  now do you propose to carry on with this case unrepresented?
[DEFENDANT]: I am not. I don't have anything to do with the case and am not carrying on at all: Whatever is done will be done without me. Whatever happens will happen without me. I don't have nothing to say with that. I have nothing to do with it from the start. I have nothing to do with it now. I came in here on the pretext that justice would be obtained from the judicial processes of the court and I have not seen nothing retaining (sic) to this since I have been in here.
After defendant dismissed his lawyer, the "Crown" called five witnesses. Defendant declined to cross examine all but the eye-witness to the robbery.
*164 To be valid, waiver of the right to counsel requires a trial court to make an on-the-record inquiry of defendant's waiver of his or her right to counsel to insure that the waiver is made knowingly and voluntarily. State v. Crisafi, 128 N.J. 499, 509, 608 A.2d 317 (1992). Defendant should be informed of the nature of the charges he faces, the statutory defenses to those charges, the possible range of allowable punishment, the technical problems he may face in acting as counsel (including that he must conduct his defense in accordance with the relevant rules of criminal procedure and evidence and that his lack of knowledge of criminal law could impair his defense). Id. at 510. The court should also advise defendant that it would be unwise not to accept the representation of counsel. Ibid.
The State concedes that the record from the Canadian transcripts does not contain the sort of colloquy which our courts have required, but submits that this omission does not render defendant's Canadian conviction unconstitutional. The State relies on the Crisafi limited exception to the requirement that a court engage in the above inquiry to establish a valid waiver. That exceptional case is when the record indicates that defendant actually understands the risks of proceeding pro se. The ultimate focus must be on defendant's actual understanding of the waiver of counsel. Id. at 512-13, 608 A.2d 317. The court cautioned that this limited exception, when the absence of a searching inquiry will not undermine the waiver of counsel, applies only in rare cases. Id. at 513, 608 A.2d 317. The Crisafi court then found that defendant, who was fifty-seven years old, a college graduate, experienced with the criminal justice system and aware of the charges, potential penalties, potential defenses and trial strategies, presented the court with such a rare case. Ibid.
Defendant distinguishes Crisafi from his case by pointing out that at the time of the Canadian conviction, he was a young man with little experience regarding the adult criminal justice system in the United States and no experience at all with the Canadian criminal justice system. Further, defendant emphasizes that the *165 exception carved out in Crisafi was limited, applicable to rare cases only, and that Crisafi had standby counsel appointed to assist him throughout the trial.
Defendant's attorney also suggests that while the Supreme Court has recognized that a pro se defendant "may wish to dance a solo, not a pas de deux," no court has recognized a defendant's right not to dance at all. This is not the case. In United States ex. rel Testamark v. Vincent, 496 F.2d 641 (2d Cir.1974), the court held that defendant's actions at trial constituted a waiver of his right to counsel when he was given the choice between proceeding with appointed counsel or proceeding pro se and he chose to do neither. Id. at 643. See also Kates v. Nelson, 435 F.2d 1085 (9th Cir.1970), where the Ninth Circuit Court of Appeals was presented with facts strikingly similar to the case at bar. On the first day of trial, after several witnesses had been cross-examined, defendant expressed dissatisfaction with the way in which he was being represented. Id. at 1085. The following exchange took place:
[The Defendant]: I want it to be known that [Mr. Helm] (the defendant's counsel) doesn't have to represent me any more  and I wasn't satisfied with him....
[The Court]: Do you want him ... to represent you or don't you? Just answer yes or no.
[The Defendant]: I don't want [him] representing me any more. I am going to represent myself in Court.
[The Court]: Do you want Mr. Helm to proceed or don't you? If he withdraws as your attorney, you will sit out there and represent yourself....
[The Defendant]: (I) don't feel that I can be represented properly by the attorney  and I'm not satisfied with him ... (N)ot only am I not satisfied  I am not going to represent myself.
[The Court]: We will proceed. Mr. Helm will continue to be your Counsel, sir.
[The Defendant]: I want it to be known that I don't want anyone out there representing me  and I am not going to represent myself.
....
[The Court]: Answer yes or no  do you want Mr. Helm to represent you or don't you?
[The Defendant]: I not only don't want Mr. Helm, but I'm not going to try to do it myself, try to represent myself.
[The Court]: I understand now that you do not want Mr. Helm to represent you. Answer that yes or not.

*166 [no answer]
[The Defendant]: I answered that one way.
[The Court]: All right, Mr. Helm will continue to represent you.
[The Defendant]: I can answer that  that I'm not going to help him represent me out in Court any more  and neither am I going to represent myself.
[Id. at 1086-87.]
For the remainder of the trial defendant represented himself pro se. In reviewing defendant's habeas corpus petition, the circuit court held that defendant waived his constitutional right to assistance of counsel stating:
[W]e have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel.... [H]e may not use this right to play a `cat and mouse' game with the court ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel. More particularly is this so when, during trial, the defendant discharges his counsel.
[Kates, supra, 435 F.2d at 1088-89 (citing United States v. McMann, 386 F.2d 611, 618-19 (2d Cir.1967), cert. denied, 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968).]
A review of the facts indicates that a Crisafi type exception to the standard waiver requirements can be found here. Defendant Williams was twenty-four years old at the time of the Canadian trial; he had three prior convictions from two states by that date; after he was arrested he asked to consult with an attorney, (Tr. 43, 54, 175, 179); he asked to be read his rights, (Tr. 172); and he inquired whether he would "get his American Constitutional Rights" (Tr. 46, 54, 179, 182). There is also some indication that defendant said he was younger than he was, presumably so that he would be charged as a juvenile. (Tr. 175). There is evidence that defendant was aware that if he was found guilty there was a possibility of being sent to jail. (Tr. 126). He discharged his counsel during trial and refused to appear pro se. The foregoing shows that defendant was cognizant of his rights, that he understood the risks of proceeding pro se, and that he was indeed playing a "cat and mouse" game with the court. Valid waiver is found.
*167 The ultimate question is whether it is fundamentally fair to use this foreign conviction to extend Williams' sentence. Applying a fundamental fairness approach to defendant's Canadian trial and conviction, and finding a Crisafi exception to normal New Jersey waiver requirements, it cannot be said that the Canadian proceedings were fundamentally unfair. Thirteen government witnesses testified at the trial. Eight were cross examined by defendant's attorney. After defendant unequivocally dismissed his attorney, five more witnesses testified and defendant had the opportunity to cross examine them, which he selectively refused. Defendant, therefore, had the effective assistance of counsel for at least three-quarters of the trial and, after he discharged his lawyer, he was given the opportunity to cross-examine the remaining government witnesses. In addition, defendant's conviction was affirmed by the Court of Appeal of Ontario, which also suggests that the conviction was constitutionally obtained.
The record clearly reflects that defendant was knowledgeable of his constitutional rights and discharged his lawyer as a deliberate strategic maneuver. Given the foregoing, this court concludes that there was a valid knowing and voluntary waiver of counsel, that the foreign trial was fundamentally fair and that the Canadian conviction can be used to impose an extended term.
NOTES
[1] Defendant explains that: (1) the larceny in Maryland was for $15.00, for which he was sentenced to time served (six months); (2) the Alabama conviction was for simple assault and battery, for which he was fined; (3) the charge for the unauthorized use of a motor vehicle resulted in a fine; and (4) the conviction for grand larceny was for grand larceny in the second degree, for which he was sentenced to five years probation. Defendant contends that without the inclusion of the Canadian conviction, it is unlikely that Judge Madden would have found that his "lengthy record of serious offenses" justified imposition of the extended sentence.
[2] Indeed, failure of defendant's previous attorneys to investigate defendant's contention that his Canadian conviction was uncounseled can be considered a form of ineffective assistance of counsel. See United States v. Moskovits, 784 F. Supp. 183, 186 (E.D.Pa. 1991) (finding failure of defense counsel to contest the validity of a Mexican conviction, where the Mexican conviction was key to whether a minimum mandatory sentence was imposed, is a form of ineffective assistance of counsel and is incompatible with minimal professional standards).
[3] See generally Note, The Treatment of Foreign Convictions as Predicates for Sentence Enhancement under Recidivist Statutes, 44 Duke L.J. 134 (1994) (proposing the application of a "reliability of conviction" standard to determine whether foreign convictions should be used under repeat offender statutes. Under the standard proposed by the author, courts would inquire whether a foreign conviction is reliable evidence that a crime in fact occurred, and whether the underlying conduct could be proscribed by an American state legislature and withstand federal constitutional challenge).
[4] Cal.Penal Code § 668 (West 1988); Fla. Stat. Ann. § 775.084(1)(c) (West Supp. 1992); Kan. Stat. Ann. § 21-4504(a) to (c) (Supp. 1993); La. Rev. Stat. Ann. § 15:529.1(A) (West 1992); Minn. Stat. Ann. § 244 App. cmt. II.B.501 (West Supp. 1993); Okla. Stat. Ann. tit. 21, § 54 (West 1983); Tenn. Code Ann. §§ 40-35-106(b)(5), 107(b)(5), -108(b)(5) (1990); Vt. Stat. Ann. tit. 13, § 11 (1974).
[5] Conn. Gen. Stat. Ann. § 53a-40(a) (West Supp. 1993); Del. Code Ann. tit 11, § 4214 (Supp. 1992); Ga. Code Ann. § 17-10-7 (1990); Ill.Ann.Stat. ch. 730, para. 5/5-5-3(c)(8) (Smith-Hurd Supp. 1994); Iowa Code.Ann. § 902.8 (West 1994); Me. Rev. Stat. Ann. tit. 17-A, § 362(3-A) (West Supp. 1993); Mass. Ann. Laws ch. 279, § 25 (Law Co-op. 1992); Miss. Code Ann. § 99-19-81 (Supp. 1993); Neb. Rev. Stat. § 29-2221(1) (1989); N.M. Stat. Ann. § 31-18-17(A) (Michie Supp. 1994); N.C. Gen. Stat. § 14-7.1 (1986); N.D. Cent. Code § 12.1-32-09(1)(c) (Supp. 1993); Ohio Rev. Code Ann. § 2929.11(B)(1)(b)-(3)(b) (Baldwin 1992); Or. Rev. Stat. § 161.725(3)-(4) (1990); 42 Pa. Cons. Stat. Ann. § 9714(b)(1) (1982); R.I. Gen. Laws § 12-19-21(A) (Supp. 1993); S.C. Code Ann. § 17-25-45(1)(A) (Law.Coop.Supp. 1993); S.D. Codified Laws Ann. § 22-7-7 (1988); Va. Code Ann. § 19.2-297.1(B) (Michie Supp. 1994); W. Va. Code § 61-11-18 (Supp. 1994).
[6] Ala. Code § 13A-5-9 (1982); Alaska Stat. § 12.55.145(a)(2)(1989); Ariz. Rev. Stat. Ann. § 13-604(N) (Supp. 1993); Ark. Code Ann. § 5-4-503 (Michie 1993); Colo. Rev. Stat. § 16-13-101(1) to (2) (Supp. 1993); D.C.Code.Ann. § 22-104a(b)(1)(B) (1989); Haw. Rev. Stat. § 706-662 (1994); Idaho Code § 19-2514 (1987); Ind. Code Ann. § 35-50-2-8 (Burns 1994); Ky. Rev. Stat. Ann. § 532.080(2) (Baldwin 1992); Md. Ann. Code art. 27, § 643B(c) (1992); Mich. Comp. Laws Ann. §§ 769.10-.12 (West Supp. 1994); Mo. Ann. Stat. § 558.016 (Vernon Supp. 1994); Mont. Code Ann. § 46-18-501(1) (1993); Nev. Rev. Stat. Ann. § 207.010 (Michie 1992); N.H. Rev. Stat. Ann. § 651:6(I)(c) (1986 & Supp. 1993); N.J. Stat. Ann. § 2C:44-4(c) (West 1982); N.Y.Penal Law § 70.06(1)(b)(i) (McKinney 1987); Tex.Penal Code Ann. § 12.42 (West 1994); Utah Code Ann. § 76-3-407 (1990); Wash. Rev. Code Ann. § 9.94A.030(12)(a) (West Supp. 1994); Wis. Stat. Ann. § 939.62 (West 1982); Wyo. Stat. § 6-10-201(a)(ii) (1988).
[7] This section is different from N.J.S.A. § 2C:44-3d, which is precise and unambiguous in its definition of the prior crimes which mandate imposition of an extended term. See State v. Copeman, 197 N.J. Super. 261, 265, 484 A.2d 1250 (App.Div. 1984) (emphasizing that subsection d. does not allow equivalent offenses under the laws of a foreign jurisdiction to trigger the mandatory extended term provision, but noting that a conviction in another jurisdiction can support a discretionary imposition of an extended term).
[8] Black's Law Dictionary defines "Jurisdiction" as a term of comprehensive import embracing every kind of judicial action; and "Foreign Jurisdiction" as any jurisdiction foreign to that of the forum, e.g. of a sister state or another country. Black's Law Dictionary 447, 594 (6th ed. 1991).
[9] N.Y.Penal Law §§ 70.04(1)(b)(i), 70.06(1)(b)(i) (McKinney 1987).
[10] A Careo hearing is a pre-trial proceeding. The only persons who may appear at a Careo hearing are the parties involved, a judge and an interpreter, if necessary. Moskovits, supra, 784 F. Supp. at 188. The judge's impression of the hearing is another piece of evidence, but is not determinative of the resolution of the case. Id. However, on the Government's motion seeking reconsideration of the order vacating the defendant's sentence, the district court held that the Careo hearings were the confrontation stage of the defendant's trial, and from the perspective of American standards of fundamental fairness the deprivation of counsel at the hearing could not be shown to be harmless beyond any reasonable doubt. Id. at 194-96.
[11] In Moskovits, the government argued that even if the Careo hearings constituted a critical phase of the proceeding at which the defendant was denied ineffective assistance of counsel, the denial of counsel did not pervade the entire proceeding and therefore should be analyzed using a harmless error standard. Moskovits, supra, 784 F. Supp. at 195. The court found that the lack of effective assistance of counsel did pervade the entire proceeding. Further, the court noted that even if a harmless error standard was applied, the government failed to show that the error was harmless beyond a reasonable doubt. Id. at 196.