**Roger PAYNE III, Petitioner,**

**v.**

**David SMITH, Respondent.**

**No. Civ.A. 00–CV–71383–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

May 28, 2002.

Roger Payne, Straits Correctional Facility, Kincheloe, MI, pro se.

John D. O'Hair, Valerie M. Steer, Wayne County Prosecutor's Office, Detroit, MI, Brenda E. Turner, Laura G. Moody, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for respondent.

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

O'MEARA, District Judge.

Petitioner Roger Payne, III, a state prisoner presently confined at the Straits Correctional Facility in Kincheloe, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner was convicted of armed robbery and felony firearm following a jury trial in the Wayne County Circuit Court in 1982. He was sentenced to 25–50 years imprisonment on the robbery conviction and a consecutive term of two years imprisonment on the firearm conviction. In his pleadings, Petitioner asserts claims concerning Michigan's procedural default rule, ineffective assistance of counsel, sentencing errors, the right to counsel and waiver of that right, sufficiency of evidence, the propriety of a photo array, involuntary confession, failure to produce a witness, prosecutorial misconduct, and the jury instructions. For the reasons stated below, the petition for a writ of habeas corpus is denied.

### I. Background Facts

Petitioner's convictions arise from the armed robbery of a market in Dearborn, Michigan on September 28, 1981. The Michigan Court of Appeals set forth the relevant facts as follows:

---

1. At the time he initiated this action, Petitioner was confined at the Ryan Correctional Facility in Detroit, Michigan. Respondent David Smith is the warden at that facility.

Defendant's convictions stemmed from the robbery of the Gold Star Market in Dearborn one evening. The market owner, Nassir Jaber, testified that he had been robbed at gunpoint by a man wearing a hard hat, accompanied by a tall black woman with a ring in her nostril. A boy who noticed the car used by the robbers wrote down its license plate number. The car was traced to Melvin Keahy, who told police defendant had borrowed it on the evening of the robbery and that defendant had been accompanied by "Nan," a tall black woman with a ring in her nose. Police confiscated a white hard hat that Keahy identified as belonging to defendant. Defendant and his companion, Nanette Watkins, were arrested in Texas and extradited to Michigan. After their arrival, defendant made a statement in which he confessed.

*People v. Payne*, No. 70537, *1 (Mich.Ct. App. Oct. 4, 1994) (unpublished).

Based upon these facts and the evidence presented at trial, the jury found Petitioner guilty of armed robbery and felony firearm. The trial court sentenced him to consecutive terms of 25–50 years imprisonment and two years imprisonment on those convictions.

## II. *Procedural History*

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, asserting the following claims through counsel:

I. The trial judge erred in allowing him to represent himself without fully advising him of the dangers of self-representation and ascertaining that the waiver of counsel was knowing, voluntary, and intelligent.

II. Because he was the focus of the investigation and there was probable cause for an arrest warrant, the police should have conducted a corporeal rather than a photographic line-up or, at a minimum, counsel should have been present when the complainant viewed the photographs.

III. The trial judge erred in finding that the prosecutor used due diligence in attempting to subpoena two endorsed, but unproduced, *res gestae* witnesses.

IV. He was denied a fair trial where in closing argument the prosecutor implicitly commented on his failure to testify, shifted the burden of proof, and argued without evidentiary support that he had fought extradition from Texas.

V. The trial judge erred in denying his request for an instruction that if circumstantial evidence is open to two reasonable interpretations, the jury must accept the inference consistent with innocence.

VI. The trial judge erred in instructing the jury that he could not be convicted of the felony firearm if he was acquitted of armed robbery.

Petitioner also raised the following claims in a supplemental pleading:

I. His felony firearm conviction should be reversed because there was insufficient evidence of operability.

II. The loss of material evidence violated his due process right to a fair trial.

III. His conviction was obtained as a direct result of a coerced confession in violation of the United States and Michigan Constitutions.

IV. It was error for the trial court to aggravate his sentence because he exercised his right to trial and had a pending charge.

While the appeal was pending, the Michigan Court of Appeals remanded the mat-

ter to the trial court for a hearing on Petitioner's *res gestae* witness claim. Petitioner also sought a remand to the trial court for a hearing on whether trial counsel was ineffective for failing to investigate and prepare a defense, but the Michigan Court of Appeals denied the request. The Michigan Court of Appeals thereafter affirmed Petitioner's convictions and sentence in an unpublished, per curiam decision. *People v. Payne*, No. 70537 (Mich. Ct.App. Oct. 4, 1984). Petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Payne*, No. 74635 (Mich. March 28, 1985).

On December 4, 1985, Petitioner filed an application for leave to file a delayed motion for evidentiary hearing and new trial with the trial court, raising the following issues:

I. He was denied the effective assistance of counsel where counsel failed to challenge the legality of the arrest warrant.

II. He was denied a fair trial when he was not given an opportunity to retain counsel and was forced into a hybrid arrangement.

III. He was denied the effective assistance of counsel where counsel limited the *Wade* hearing to whether the photo array was permissible and whether counsel should have been present during that photo showing.

IV. He was denied the effective assistance of counsel where counsel failed to challenge the admissibility of the confession on Sixth Amendment grounds.

V. He was denied a fair trial where the prosecution failed to produce all *res gestae* witnesses.

VI. He was denied a fair trial where the prosecution and the police deliberately withheld information concerning a *res gestae* witness.

VII. He was denied a fair trial where the jury was exposed to a proposed exhibit—the white hard hat—before its admissibility had been determined.

VIII. He was denied a fair trial because he did not have the benefit of a properly-instructed jury.

IX. He was denied the effective assistance of counsel because counsel did not conscientiously protect his interests.

The trial court issued a written opinion denying Petitioner's motion on March 25, 1996. Petitioner's motion for reconsideration was also denied. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied on March 4, 1987. Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied on August 28, 1987.[2]

Petitioner also filed an application for leave to file a delayed motion for rehearing or reconsideration in the Michigan Court of Appeals, raising the *res gestae* witness claim, the jury instruction claim, the vindictive sentencing claim, the involuntary confession claim, and the prosecutorial misconduct claim. The Michigan Court of Appeals denied the application. *People v. Payne*, Nos. 111984, 112753 (Mich.Ct.App. April 13, 1989). Petitioner also filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Payne*, Nos. 86152, 86153 (Mich. Feb. 26, 1990).

**2.** Copies of the these appellate orders have not been included in the court file, but the parties agree as to the dates and dispositions of these matters.

On April 12, 1994, Petitioner filed a motion for relief from judgment with the trial court asserting the following claims:

I. His convictions were obtained through the use of an involuntary confession in violation of the 5th and 14 Amendments.

II. His convictions were obtained through the use of a statement made in the absence of counsel in violation of the 6th and 14th Amendments.

III. He was denied the effective assistance of trial and appellate counsel for failure to raise these issues.

The trial court denied the motion on August 3, 1994. Petitioner's motion for reconsideration was also denied. Petitioner filed a delayed application for leave to appeal this decision with the Michigan Court of Appeals, which was denied. *People v. Payne*, No. 182819 (Mich.Ct.App. April 4, 1995). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Payne*, No. 102922, 450 Mich. 958, 548 N.W.2d 631 (Mich. Dec.27, 1995).

On April 23, 1997, Petitioner submitted a second motion for relief from judgment with the trial court asserting the following claims in his initial and supplemental pleadings:

I. He was denied the effective assistance of counsel where he rejected a plea offer of 3–5 years on the armed robbery count on counsel's advice and received a sentence of 25–50 years after trial.

II. His indeterminate sentence of 25–50 years is the result of judicial vindictiveness where he received a much higher sentence than that offered in the plea agreement after exercising his right to a jury trial.

III. His sentence of 25–50 years imprisonment is and abuse of discretion because it was designed to circumvent the legislative intent of the Indeterminate Sentencing Act and the "Lifer Law."

IV. He is entitled to an evidentiary hearing to further develop the record in support of his ineffective assistance of counsel claim.

V. The retroactive application of the state law amendments which increased intervals between parole interviews enhanced his sentence and violated the *ex post facto* clauses of the United States and Michigan Constitutions.

VI. The principles of *res judicata* and "law of the case" do not apply in this case.

VII. The trial court abused its discretion in denying his 1994 motion for relief from judgment without conducting a hearing or setting forth findings of fact and conclusions of law as required by state law.

The trial court denied the motion on March 2, 1998. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D). *People v. Payne*, No. 216460 (Mich.Ct.App. July 23, 1999). Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied on the same basis. *People v. Payne*, No. 115434, 461 Mich. 969, 609 N.W.2d 190 (Mich. Feb.29, 2000).

Petitioner filed his initial petition for a writ of habeas corpus, dated March 14, 2000, on March 20, 2000, raising the following claims:

I. M.C.R. 6.500 does not apply to bar federal habeas corpus review.

II. He was denied the effective assistance of counsel where he rejected a plea offer of 3–5 years on the armed robbery count on counsel's advice and received a sentence of 25–50 years after trial.

III. His indeterminate sentence of 25–50 years is the result of judicial vindictiveness where he received a much higher sentence than that offered in the plea agreement after exercising his right to a jury trial.

IV. His sentence of 25–50 years imprisonment is and abuse of discretion because it was designed to circumvent the legislative intent of the Indeterminate Sentencing Act and the "Lifer Law."

V. He is entitled to habeas relief due to retroactive changes in the law which effectively altered his original sentence.

VI. The trial court's failure to comply with Michigan Court Rules deprived him of his 6th and 14th Amendment right to counsel.

VII. Petitioner's convictions were obtained in violation of his 5th, 6th, and 14th Amendment rights.

VIII. He is entitled to a hearing on his claims, which present mixed questions of law and fact, because the state courts did not provide a full and fair hearing.

Respondent filed an answer to the initial petition on November 22, 2000, asserting that it should be denied for lack of merit. Petitioner filed a reply and an amendment to the petition on March 1, 2001, asserting the following claims:

I. His felony firearm conviction should be reversed because there was insufficient evidence of operability.

II. The trial judge erred in allowing him to represent himself without fully advising him of the dangers of self-representation and ascertaining that the waiver of counsel was knowing, voluntary, and intelligent.

A. He was denied an opportunity to retain counsel and was forced into a hybrid arrangement.

III. Because he was the focus of the investigation and there was probable cause for an arrest warrant, *the police should have conducted a* corporeal rather than a photographic line-up or, at a minimum, counsel should have been present when the complainant viewed the photographs.

IV. His convictions were obtained through the use of a coerced confession in violation of the United States and Michigan Constitutions.

A. His right to due process was violated when the trial court denied his motion to suppress his statement.

B. His statement was obtained in violation of his 5th and 14th Amendment rights against self-incrimination.

C. His statement was procured in the absence of counsel in violation of his 6th and 14th Amendment rights.

D. Trial and appellate counsel were ineffective for failing to raise these issues.

V. He was denied his constitutional rights where the prosecution failed to produce *res gestae* witnesses.

VI. He was denied a fair trial where in closing argument the prosecutor implicitly commented on his failure to testify, shifted the burden of proof, and argued without evidentiary support that he had fought extradition from Texas.

VII. The trial court erred in instructing the jury in violation of due process.

VIII. He was denied the effective assistance of trial and appellate counsel because they failed to properly raise issues.

 A. Counsel failed to challenge the legality of the arrest warrant.

 B. Counsel limited the *Wade* hearing to whether the photo array was permissible and whether counsel should have been present during that photo array.

 C. Counsel failed to challenge the admissibility of his confession on 6th Amendment grounds.

 D. Counsel did not conscientiously protect his interests.

Respondent filed an answer to the amendments on October 25, 2001, asserting that the claims should be denied for lack of merit.

### III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court undertook a detailed analysis of the correct standard of review under the AEDPA. According to the Court:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13, 120 S.Ct. 1495 (O'Connor, J., delivering the opinion of the Court on this issue).

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively un-

reasonable." *Id.* at 411, 120 S.Ct. 1495. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

Lastly, § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. *Analysis*

### A. *MCR 6.500 Claim*

■ Petitioner first claims that the trial court erred in denying his motion for relief from judgment under MCR 6.500 and failing to provide him with a hearing on his claims. However, a state court's alleged failure to properly apply its own procedural rule, even if established, is not cognizable on federal habeas review. This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Habeas relief is unavailable for mere errors of state law and a federal court will not review a state court's decision on a matter of purely state law. *Lew-*

*is v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *see also Long v. Smith,* 663 F.2d 18 (6th Cir.1981). Petitioner is thus not entitled to habeas relief on this claim of error. Moreover, as discussed *infra,* the Michigan courts' application of MCR 6.500 to Petitioner's 1997 motion for relief from judgment was appropriate and may bar federal habeas review.

### B. *Procedural Default of Plea–Related Ineffective Assistance Claim, Sentencing Claims, and Michigan General Court Rule Claim*

The Court will next address the issue of procedural default, which is relevant to Petitioner's second, fourth, fifth, and sixth habeas claims. Petitioner first presented these claims to the state courts in his 1997 motion for relief from judgment. The trial court denied the claims as procedurally defaulted under MCR 6.508(D), finding that Petitioner had not shown good cause for failing to raise the claims on direct appeal or in his various post-conviction proceedings. Both Michigan appellate courts denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

■ Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes,* 433 U.S. 72, 85–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright,* 433 U.S. at 85, 97 S.Ct. 2497; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir.2001). In such a case, a federal court must determine not only whether a petitioner has

failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

■ Here, the Michigan Supreme Court relied upon MCR 6.508(D) in denying Petitioner leave to appeal. That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised previously, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct.R. 6.508(D). The state court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones,* 238 F.3d 399, 407 (6th Cir.2000). Although the Michigan Supreme Court did not fully explain its decision, the record indicates that Petitioner failed to raise his second through sixth habeas claims in his first motion for relief from judgment despite the opportunity to do so.

■ A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Gravley v. Mills,* 87 F.3d 779, 784–85 (6th Cir. 1996).

■ In this case, Petitioner fails to establish cause to excuse his failure to present the issues raised in his second motion for relief from judgment in his first motion for relief from judgment.[3] Rather, Petitioner asserts that Mich.Ct.R. 6.508(D) should not preclude habeas relief because he was convicted and his direct appeals were concluded prior to that rule's October 1, 1989 effective date, and the rule does not apply retroactively. Petitioner cites *Rogers v. Howes,* 144 F.3d 990 (6th Cir. 1998), and *Luberda v. Trippett,* 211 F.3d 1004 (6th Cir.2000), in support of his position.

Petitioner's reliance upon *Rogers,* however, is misplaced. In *Rogers,* the United States Court of Appeals for the Sixth Circuit refused to apply MCR 6.508(D)(3) retroactively and held that the rule was not a firmly established and regularly followed rule of the Michigan courts at the time of the petitioner's 1965 conviction and thus was not an adequate and independent state procedural rule which barred review of the petitioner's habeas claims. *Id.* at 993–94. The procedural default in *Rogers* involved the petitioner's failure to raise his habeas claims on direct review (in 1965), not a

---

**3.** To the extent that Petitioner may be claiming ineffective assistance of appellate counsel, he does not establish cause to excuse his default. Because there is no constitutional right to counsel in postconviction proceedings, a defendant cannot rely on ineffective assistance of counsel in such proceedings to establish entitlement to habeas corpus or similar relief. *See Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ritchie v. Eberhart,* 11 F.3d 587, 591–92 (6th Cir.1993)..

failure to raise them in his first motion for relief from judgment (in 1991). *Id.* at 993, n. 3.[4]

In the present case, MCR 6.508(D) need not be applied retroactively to bar Petitioner's habeas claims. The procedural default concerns Petitioner's failure to raise certain habeas claims in his first motion for relief from judgment in 1994. The default does not concern Petitioner's failure to raise the claims on direct appeal. Thus, the present case is akin to *Jones v. Toombs*, 125 F.3d 945 (6th Cir.1997). In that case, the Sixth Circuit upheld the dismissal of a habeas petition based upon a procedural default under MCR 6.508(D)(3), even though the prisoner was convicted in 1983 (before the rule's 1989 effective date), because the prisoner had filed a motion for new trial in 1990 and a subsequent motion for relief from judgment (which included a new claim) in 1992. The Sixth Circuit found that the petitioner's 1990 motion was a "prior motion under this subchapter" for purposes of MCR 6.508(D)(3) and held that "when the Michigan courts denied the motions brought after 1990 pursuant to MCR 6.508(D)(3), they were applying a firmly established and regularly followed procedural rule." *Id.* at 947. The same is true in the case at hand. Petitioner's first motion for relief from judgment was filed in 1994, after the effective date of MCR 6.508(D). Thus, MCR 6.508(D) applies to Petitioner's case and the state court's dismissal of his habeas claims was pursuant to an adequate and independent state procedural rule.

Because Petitioner has failed to establish cause to excuse his procedural default, this Court need not address the issue of

prejudice. *See Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Long v. McKeen,* 722 F.2d 286, 289 (6th Cir.1983). Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. Petitioner has made no such showing in this case. Petitioner's second through sixth habeas claims are thus barred by procedural default and do not warrant relief.

### C. *Sentencing Enhancement Claim*

▇▇▇ Petitioner's third claim is that the trial judge enhanced his sentence above the guideline range because he rejected a plea offer and exercised his right to trial. A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *See Wasman v. United States,* 468 U.S. 559, 568, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984); *Waring*

---

**4.** Following *Rogers,* the Sixth Circuit rejected a "date of conviction" rule and concluded that "federal courts must decide on a case-by-case basis whether, during the period that a defendant may, if he wishes, tailor his appeal to avoid the consequences of a state procedur-

al rule, the 'defendant ... could ... be deemed to have been apprised of [the procedural rule's] existence.' " *Luberda,* 211 F.3d at 1008 (quoting *Ford v. Georgia,* 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)).

v. Delo, 7 F.3d 753, 758 (8th Cir.1993); Morales v. Miller, 41 F.Supp.2d 364, 380 (E.D.N.Y.1999); see also North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). However, while a criminal defendant "may not be subjected to more severe punishment for exercising his constitutional right to stand trial, the mere imposition of a heavier sentence after a defendant voluntarily rejects a plea bargain does not, without more, invalidate the sentence." United States v. Morris, 827 F.2d 1348, 1352 (9th Cir.1987) (citations omitted). When the record contains statements that give rise to an inference of vindictive sentencing, the record must affirmatively show that no improper weight was given to the failure to plead guilty. Id.

■ The Michigan Court of Appeals addressed this issue on direct appeal and found "no hint of support for defendant's claim in the record." The court noted that although Petitioner's sentence was above the guideline range, the guidelines were not mandatory at the time of his sentencing and his sentence did not shock its conscience. People v. Payne, No. 70537, *6. Having reviewed the record, this Court agrees with the Michigan Court of Appeals' finding that there is no evidence of judicial vindictiveness in the trial court's decision impose a sentence above the recommended guideline range.

■ Further, to the extent that Petitioner claims that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief. See Atkins v. Overton, 843 F.Supp. 258, 260 (E.D.Mich.1994). A petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. Thomas v. Foltz, 654 F.Supp. 105, 106–07 (E.D.Mich. 1987). Additionally, there is no federal constitutional right to individualized sentencing. United States v. Thomas, 49 F.3d 253, 261 (6th Cir.1995).

To the extent that Petitioner alleges that his sentence constitutes cruel and unusual punishment under the Eighth Amendment, he is also not entitled to habeas relief. In Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the United States Supreme Court ruled that a mandatory life sentence without possibility of parole for a first offense of possession with intent to distribute more than 650 grams of cocaine was not cruel and unusual punishment prohibited by the Eighth Amendment. Following Harmelin, the Sixth Circuit has ruled that "there is no requirement of strict proportionality; the Eighth Amendment is offended only by an extreme disparity between crime and sentence." United States v. Hopper, 941 F.2d 419, 422 (6th Cir. 1991). The Sixth Circuit has also stated that "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." United States v. Thomas, 49 F.3d 253, 261 (6th Cir.1995) (refusing to disturb an HIV-positive defendant's sentence of 110 months imprisonment with four years of supervised release for one count of distributing crack cocaine and one count of possession with intent to deliver).

■ Petitioner was sentenced to 25 to 50 years imprisonment on his armed robbery conviction. The maximum sentence for his crime is life imprisonment. See Mich.Comp.Laws § 750.529. The trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between Petitioner's crime and his sentence so as to offend the Eighth Amendment. Petitioner is not entitled to habeas relief on this claim.

### D. *Statement Obtained in Violation of Right to Counsel Claim*

Petitioner's seventh claim is that his conviction is invalid because his confession was obtained in violation of the right to counsel. Specifically, Petitioner asserts that the right to counsel attached during his extradition proceedings in Texas, such that counsel was required to be present when he made his statement to police in Michigan.

 Petitioner first raised this claim in his 1994 motion for relief from judgment and the trial court found it to be precluded by the doctrines of res judicata and law of the case. The trial court also noted that Petitioner failed to demonstrate actual prejudice under MCR 6.508(D)(3)(b). The Michigan appellate courts denied leave to appeal for failure to establish grounds for relief under MCR 6.508(D). For purposes of federal habeas review, however, Petitioner has not procedurally defaulted this claim because the default invoked by the state courts concerns Petitioner's failure to raise this claim on direct appeal of his convictions. The procedural default rule of MCR 6.500 was not firmly established and regularly followed by the Michigan courts at the time of Petitioner's 1982 conviction and subsequent direct appeals and thus is not an adequate and independent state procedural rule which bars review of this claim. *See Rogers v. Howes*, 144 F.3d 990, 993–94 (6th Cir.1998), *see also Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir.2000) ("federal courts must decide on a case-by-case basis whether, during the period that a defendant may, if he wishes, tailor his appeal to avoid the consequences of a state procedural rule, the 'defendant ... could ... be deemed to have been apprised of [the procedural rule's] existence.' ").

 Although not procedurally defaulted, this claim must nonetheless be denied for lack of merit. The right to counsel under the Sixth Amendment attaches when adversary criminal proceedings are initiated against an individual "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). But there is no Sixth Amendment right to counsel at an extradition hearing. *See United States v. Doherty*, 126 F.3d 769, 782 (6th Cir.1997) (holding that statutory right to counsel at an extradition hearing under the Uniform Crime Extradition Act does not trigger Sixth Amendment right to counsel such that subsequent confession was properly admitted), *partially abrogated on other grounds, Texas v. Cobb*, 532 U.S. 162, 168 n. 1, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); *United States v. Harrison*, 213 F.3d 1206, 1210–11 (9th Cir. 2000) (describing an extradition hearing at which a public defender represented a defendant as a "non-critical" stage for purposes of determining whether the Sixth Amendment right to counsel had attached); *Judd v. Vose*, 813 F.2d 494, 497 (1st Cir.1987) ("[A]n extradition hearing has a 'modest function' not involving the question of guilt or innocence, and is not a 'criminal proceeding' within the meaning of the sixth amendment."); *Caltagirone v. Grant*, 629 F.2d 739, 748 n. 19 (2nd Cir. 1980) (the Sixth Amendment applies only to criminal prosecutions, and an extradition proceeding is not a criminal prosecution). Accordingly, Petitioner's Sixth Amendment right to counsel did not attach at his extradition proceedings such that his subsequent un-counseled confession should have been suppressed. As discussed *infra*, Petitioner voluntarily confessed his crimes and his confession was properly admitted into evidence. Petitioner is thus not entitled to relief on this claim.

### E. *Right to an Evidentiary Hearing*

Petitioner's eighth claim is that he should be granted an evidentiary hearing

in this matter because the state courts failed to conduct a full and fair hearing on his claims of constitutional error. This Court has discretion to conduct an evidentiary hearing after the filing of the answer and Rule 5 materials. *See* Rule 8, 28 U.S.C. foll. § 2254. Section 2254(e)(2) of the AEDPA provides the relevant standard for determining whether a habeas petitioner is entitled to an evidentiary hearing:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Petitioner in this case has not specified which of his habeas claims warrant an evidentiary hearing, nor has he described what new facts or evidence could be developed through such a hearing or asserted that his claims are based upon new rules of constitutional law. Further, having reviewed the record, this Court concludes that an evidentiary hearing is not necessary because Petitioner's habeas claims are either barred by procedural default or lack merit.

## F. *Insufficient Evidence of Felony Firearm*

Petitioner's ninth habeas claim is that there was insufficient evidence of operability to support his felony firearm conviction. In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781; *see also Warren*, 161 F.3d at 360.

In this case, the Michigan Court of Appeals found that operability is not an element of the crime of felony firearm and denied this claim. *See People v. Payne*, No. 70537 at *5. Under Michigan law, the elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *People v. Avant*, 235 Mich.App. 499, 505, 597 N.W.2d 864 (1999). Operability is not an element of the offense. *See People v. Thompson*, 189 Mich.App. 85, 86, 472 N.W.2d 11 (1991). In this case, the victim of the robbery identified Petitioner as the robber of his market and testified that Petitioner possessed a gun during the course of the robbery. Petitioner also confessed to these facts. Such evidence was sufficient to establish the elements of felony firearm beyond a reasonable doubt. Petitioner is thus not entitled to habeas relief on this claim.

## G. *Waiver of Counsel/Self–Representation Claim*

Petitioner's tenth claim is that the trial court erred in allowing him to represent himself without fully advising him of the disadvantages of self-representation and ascertaining that the waiver of counsel was

voluntary, knowing, and intelligent. Petitioner also claims that the court failed to provide him an opportunity to retain counsel.

**]** The Michigan Court of Appeals considered this claim on direct appeal, finding that the trial court discussed the wisdom of self-representation with Petitioner "at some length" and noting that Petitioner performed better than many attorneys. The Michigan Court of Appeals also stated that denying Petitioner's request for self-representation would have been error under the circumstances. *People v. Payne,* No. 70537, *4–5 (citing *People v. Anderson,* 398 Mich. 361, 247 N.W.2d 857 (1976), which discusses federal law). This decision is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof.

**** The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel, and gives an indigent criminal defendant the right to the assistance of court-appointed counsel. *Gideon v. Wainwright,* 372 U.S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Sixth Amendment also grants a criminal defendant the right to self-representation, if he voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California,* 528 U.S. 152, 120 S.Ct. 684, 687, 145 L.Ed.2d 597 (2000); *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A waiver of the right to counsel must be voluntary, knowing and intelligent, and unequivocal. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525; *United States v. Martin,* 25 F.3d 293, 295–96 (6th Cir. 1994). The right to defend oneself and the right to counsel are viewed as correlative rights in that waiver of one necessarily constitutes an assertion of the other. *United States v. Conder,* 423 F.2d 904, 908 (6th Cir.1970).

Petitioner first alleges that his waiver of the right to counsel was not voluntary because he was forced to choose between being represented by counsel with whom he disagreed and representing himself. A trial court does not err by requiring a criminal defendant to proceed with appointed counsel or to represent himself. *Morton v. Foltz,* 782 F.2d 1042, 1985 WL 14072, *3 (6th Cir.1985) (citing *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976); *Unites States ex rel. Testamark v. Vincent,* 496 F.2d 641, 643–44 (2nd Cir. 1974)). Several courts have concluded that a defendant may waive the right to counsel by refusing to proceed with competent court-appointed counsel. *See United States v. Hochschild,* 129 F.3d 1266, 1997 WL 705089, *4 (6th Cir.1997) (defendant waived right to counsel where he sought withdrawal of court-appointed counsel and refused to cooperate with public defender); *United States v. Gangler,* 125 F.3d 856, 1997 WL 618783, *2–3 (6th Cir.1997) (waiver of right to counsel can be inferred from defendant's unreasonable refusal to proceed with appointed counsel at sentencing); *United States v. Burson,* 952 F.2d 1196 (10th Cir.1991) (waiver found where no good cause shown for dissatisfaction with current counsel); *United States v. Robinson,* 913 F.2d 712, 714–15 (9th Cir. 1990) (defendant's expressions of being forced to represent himself did not invalidate waiver when there was no evidence of attorney incompetence); *United States v. Fazzini,* 871 F.2d 635, 642 (7th Cir.1989) (waiver found where defendant refused to cooperate with appointed counsel); *United States v. Moore,* 706 F.2d 538, 540 (5th Cir.1983) ("persistent unreasonable demand for dismissal of counsel and appointment of new counsel ... is the functional equivalent of waiver of counsel").

**** Petitioner has offered no evidence to establish that appointed counsel was

unprepared or incompetent in this matter. Rather, the record reflects that Petitioner disagreed with counsel's advice and proposed strategy. Such disagreement does not render Petitioner's waiver of counsel involuntary. Petitioner affirmatively stated his desire to represent himself at trial.

Petitioner also alleges that the trial court failed to ensure that his waiver of counsel was knowing and intelligent because the court did not sufficiently warn him of the dangers and disadvantages of self-representation. Although waiver of the right to counsel must be knowing and intelligent, a state trial court is not required to engage in a "deliberate and searching inquiry" into the reasons for a defendant's decision to represent himself. *Noble v. Wilkinson,* 9 F.3d 109, 1993 WL 436850, *1 (6th Cir.1993). Indeed, as noted, waiver of the right to counsel can be inferred from a defendant's actions. *See Gangler, supra,* 1997 WL 618783 at *2–3.

In this case, the trial court encouraged Petitioner to proceed with appointed counsel, but Petitioner refused. The trial court inquired into Petitioner's education and legal knowledge and warned Petitioner that he would be held to the same rules as counsel. The trial court allowed Petitioner to represent himself, but required appointed counsel to remain and assist Petitioner if requested. From the record before this Court, it is clear that Petitioner voluntarily, knowingly, and intelligently waived his right to counsel and chose to represent himself at trial. Moreover, Petitioner was able to consult with his appointed attorney during the trial. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## H. *Photographic Array Claim*

Petitioner's eleventh claim is that the police should have conducted a corporeal lineup rather than a photographic array, or should have allowed counsel to be present when the victim viewed the photo-

graphs, because the police had probable cause for his arrest. The Michigan Court of Appeals rejected this claim, stating:

> Defendant objects to the trial court's failure to suppress a photographic identification made by the market owner, Nassir Jaber. The day after the robbery, Jaber was shown six pictures including one of defendant. Jaber was unable to make a positive identification, but picked out two pictures, including defendant's. Defendant contends that because there was probable cause for his arrest at that point, the police erred in conducting a photographic rather than a corporeal identification. However, we agree with this Court's conclusion in *People v. Erwin Wilson,* 95 Mich.App. 93, 99, 290 N.W.2d 89 (1980), that to require arrest and corporeal lineup in a case where there may be probable cause to arrest could pressure police into making premature and unjustified arrests. The photo showup prior to arrest in this case was proper. Furthermore, because defendant was not in custody he had no right to have an attorney present at the photo showup. *People v. Henley,* 130 Mich.App. 383, 342 [343] N.W.2d 562 (1983).

*People v. Payne,* No. 70537, *2.

This decision is consistent with federal law and constitutes a reasonable application of that law. In *Simmons v. United States,* 390 U.S. 377, 384–86, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the United States Supreme Court acknowledged that a corporeal identification is usually more accurate than a photographic identification, but affirmed the propriety of photographic arrays, relying upon "a course of cross-examination at trial which exposes to the jury the method's potential for error" and explicitly declining "to prohibit its employment, either in the exercise of our supervisory power or, still less, as a

matter of constitutional requirement." *Id.* at 384, 88 S.Ct. 967. Federal courts have since held that a criminal defendant has no constitutional right to a corporeal line-up. *See, e.g., United States v. Storer,* 956 F.2d 1169, 1992 WL 45764, *2 (9th Cir.1992) (unpublished); *Branch v. Estelle,* 631 F.2d 1229, 1234 (5th Cir.1980); *United States v. Gerard,* 781 F.Supp. 479, 481 (E.D.Tex. 1991). Further, an accused's right to have counsel present at a pre-trial identification procedure only attaches to lineups conducted at or after the initiation of adversarial judicial criminal proceedings. *Moore v. Illinois,* 434 U.S. 220, 227–28, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). In this case, Petitioner was only a potential suspect when police presented the photographic array to Nassir Jaber; Petitioner had not been arrested nor formally charged. Furthermore, the Sixth Amendment does not guarantee an accused the right to have counsel present at photographic arrays. *United States v. Ash,* 413 U.S. 300, 321, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). Petitioner's claims that the photographic array was improper because a corporeal line-up could have been done or because the array was conducted in the absence of counsel are therefore without merit.

Although an accused does not have a right to counsel at a photographic lineup, an accused is nevertheless entitled to due process protection against the introduction of evidence of, or tainted by, an unreliable identification elicited through an unnecessarily suggestive photographic display. *Id.* at 320, 93 S.Ct. 2568. In this case, however, Petitioner does not assert any facts, nor is there any evidence, indicating that the photographic array was unduly suggestive.

Further, even assuming that the array was improper or suggestive, there was no basis to suppress Mr. Jaber's in-court identification of Petitioner. An in-court identification by a witness need not be excluded when it can be established that the identification has an independent origin untainted by the suggestive pre-trial identification procedures. *See, e.g., United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In this case, Mr. Jaber established an independent basis for his identification of Petitioner—his recollection of the man who robbed his market. Petitioner's claim is therefore without merit and does not warrant habeas relief.

### I. *Involuntary Confession Claim*

Petitioner's twelfth claim is that his confession was involuntary and he did not voluntarily waive his *Miranda* rights. The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly,* 479 U.S. 157, 163–64, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988).

The voluntariness of a confession is a mixed question of law and fact. *Thompson v. Keohane,* 516 U.S. 99, 108–11, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Those circumstances include:

1. Police Coercion (a "crucial element")

2. Length of Interrogation
3. Location of Interrogation
4. Continuity of Interrogation
5. Suspect's Maturity
6. Suspect's Education
7. Suspect's Physical Condition & Mental Health
8. Whether Suspect Was Advised of Miranda Rights

*Withrow v. Williams*, 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly*, 479 U.S. at 167, 107 S.Ct. 515 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was obtained involuntarily rests with the petitioner. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir.1987). Voluntariness need only be established by a preponderance of the evidence. *Id.*

■■■ In this case, the Michigan Court of Appeals concluded that the trial court did not err in finding that Petitioner's confession was voluntary. *People v. Payne*, No. 70537, *2. Having reviewed the record, this Court is convinced that the state courts' determination that Petitioner's confession was voluntary is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. Although Petitioner claims that... The trial court found the police officer's version of events more credible. The credibility of witnesses and whether in fact the police engaged in coercive activity fall within the category of issues to which the § 2254(d) presumption of correctness is applied. *See Miller*, 474 U.S. at 112, 106 S.Ct. 445. Petitioner has not rebutted the state court's factual findings with clear and convincing evidence.

Petitioner was approximately 30 years old at the time he made his statement, had several prior convictions, and was familiar with criminal procedures. There is no evidence of coercion. Petitioner was not deprived of necessary nourishment, medical care, sleep, or other essentials while in custody. Further, he was advised of her *Miranda* rights by the police prior to being questioned and waived those rights. Having scrutinized the relevant factors, the Court is satisfied that Petitioner's confession was voluntary and that his constitutional rights were not violated by the admission of his statement into evidence at trial. Petitioner is not entitled to relief on this claim.

## J. *Res Gestae Witness Claim*

■■■ Petitioner's thirteenth claim is that the prosecution failed to produce and/or deliberately withheld *res gestae* witnesses who would have testified favorably to the defense. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The prosecution in a criminal trial must make a good faith effort to produce relevant witnesses. *See, e.g., Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). The standard for evaluating whether the prosecution has made a good faith effort to produce a witness is one of reasonableness. *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The failure to produce a relevant witness only serves as a basis for habeas corpus relief if, under federal constitutional law, the petitioner is

denied a fundamentally fair trial. *See Moreno v. Withrow*, 61 F.3d 904, 1995 WL 428407, *1–2 (6th Cir.1995) (failure to call res gestae witness did not render trial fundamentally unfair and did not constitute prosecutorial misconduct).

█ Additionally, the United States Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir.1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432–36, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir.1993).

In this case, the Michigan Court of Appeals found that the prosecutor erred in failing to produce certain witnesses, including two truck drivers who were in the market at the time of the robbery and another unidentified individual who was sitting in a car near the getaway car during the robbery. The court, however, found that the error was harmless because Petitioner made a valid confession and "any testimony the missing witnesses might have provided could not have raised a doubt in even one juror's mind as to

defendant's guilt." *People v. Payne*, No. 70537, *3–4.

█ This Court agrees. Even if the failure to produce the witnesses violated Petitioner's constitutional rights, Petitioner is not entitled to relief from this Court. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict). Harmless error analysis applies to jury instruction errors, *see Neder v. United States*, 527 U.S. 1, 15–16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), as well as Confrontation Clause errors, *see Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Given the evidence presented at trial, particularly Nassir Jaber's testimony and Petitioner's confession, there was more than sufficient evidence for the jury to find Petitioner guilty of armed robbery and felony firearm beyond a reasonable doubt. Petitioner is not entitled to relief on this claim.

## K. *Prosecutorial Misconduct Claim*

Petitioner's fourteenth claim is that the prosecutor engaged in misconduct by commenting on his failure to testify, shifting the burden of proof to the defense, and arguing without evidentiary support that he had fought extradition. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314

(1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Factors to be considered in weighing the extent of a prosecutor's misconduct are:

> the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1355–56 (6th Cir.1993)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Id.* (citations omitted).

In this case, the Michigan Court of Appeals found that any improper comments by the prosecutor were harmless. *People v. Payne*, No. 70537, *5 (citing state law cases employing the harmless beyond a reasonable doubt standard). For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir.1999) (harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error); *see also O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict).

■ Having reviewed the record, this Court concludes that the Michigan Court of Appeals' decision is consistent with federal law and constitutes a reasonable application thereof. The prosecutor's alleged improper comments were isolated in nature and did not so prejudice the defense as to warrant habeas relief. Given the evidence presented at trial, particular the victim's testimony and Petitioner's confession, it cannot be said that any of the prosecutor's disputed comments rendered Petitioner's trial fundamentally unfair. Petitioner is not entitled to relief on the basis of prosecutorial misconduct.

### L. *Jury Instruction Claim*

■ Petitioner's fifteenth claim challenges the jury instructions because the trial court instructed the jurors that in order to convict him of felony firearm they must convict him of the underlying felony of armed robbery. In order for habeas relief to be warranted on the basis of an improper jury instruction, a petitioner must show that the challenged instruction was so infirm that it rendered the trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is a heavy one. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (quoting *Cupp v.*

*Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); *Austin v. Bell,* 126 F.3d 843, 846 (6th Cir.1997). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *Binder v. Stegall,* 198 F.3d 177, 179 (6th Cir.1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *Grant v. Rivers,* 920 F.Supp. 769, 784 (E.D.Mich.1996).

■ In this case, the Michigan Court of Appeals determined that the instruction was improper under Michigan law, but found the error to be harmless because it did not prevent the jury from exercising leniency and the jury could still have convicted Petitioner of armed robbery alone, but chose to convict him of both counts. *People v. Payne,* No. 70537, *5–6. This Court agrees. Petitioner has not shown that the jury instruction had a substantial or injurious effect or influence upon the jury's verdict. *See Brecht,* 507 U.S. at 637, 113 S.Ct. 1710. Given the testimony presented at trial, there was more than sufficient evidence for the jury to convict him of both armed robbery and felony firearm. He is not entitled to relief on this claim.

## M. *Ineffective Assistance of Counsel Claim*

Petitioner's final claim is that trial and appellate counsel were ineffective for failing to properly raise his habeas claims in the state courts. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made

errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687, 104 S.Ct. 2052. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

■ With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690, 104 S.Ct. 2052. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689, 104 S.Ct. 2052. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052. The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id.* at 689, 104 S.Ct. 2052.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* In *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court observed that "an analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." The United States Court of Appeals for the Sixth Circuit has thus concluded that a reviewing court should focus on whether counsel's alleged errors "have undermined the reliability of and

650

confidence in the result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir.1996). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 1311–12 (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052).

 Petitioner in this case cannot establish that counsels' performance was deficient and/or that he was prejudiced by counsels' conduct given this Court's determination that his underlying habeas claims are without merit. Further, Petitioner has not alleged what counsel could have or should have done to obtain a different result at trial or on appeal. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir.1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir.1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Petitioner is thus not entitled to habeas relief on this claim.

### V. *Conclusion*

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented. Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**